# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# MARQUETTE DIVISION

CODY WICKS,

|  |  |  |  |
|---|---|---|---|
|  | | Case No. | cv |
| Plaintiff, | | Judge: | |

v.

FIRST PROPERTY HOLDINGS, LLC
d/b/a RIZE

Defendant.

---

Keith D. Flynn (P74192)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
Miller Cohen, PLC
7700 2nd Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com

_____/

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence as alleged in the complaint.

*/s/Ryan A. Paree*

## **COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff, Cody Wicks, by and through his attorneys, Miller

Cohen, PLC, and for his Complaint against Defendant, First Property Holdings, LLC

d/b/a Rize, states as follows:

**PARTIES**

1. Plaintiff, Cody Wicks, is an African-American man who was employed by the Defendant. He is a resident of Quinnesec, Michigan.

2. Defendant, First Property Holdings, LLC d/b/a Rize, is a cannabis dispensary operating several stores in Michigan's Upper Peninsula. Defendant's corporate address is located at 321 East Lake Street, in Petoskey, Michigan.

**JURISDICTION**

3. This Court has original jurisdiction over Plaintiff's claims arising under Title VII pursuant to 28 USC 1331.

4. Under 28 USC 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5. This Court is the proper venue pursuant to 28 USC 1391(b).

**GENERAL ALLEGATIONS**

6. Plaintiff Cody Wicks worked for the Defendant from late 2020 until his constructive termination in September 2022 as a supervisor at the Defendant's Iron Mountain store.

7. During his time working for the Defendant, Mr. Wicks was subjected to countless incidences of racism and sexual harassment by employees and management.

8.      For example, Mr. Wicks was frequently scheduled to work shifts with a white subordinate by the name of Paul Jakes ("Jakes") who used the word "nigger" on a daily basis, sometimes in reference to customers and sometimes in reference to Mr. Wicks directly.

9.      Jakes referred to black people as "dirty" and "gross" on a regular basis.

10.     Mr. Wicks complained about Jakes to management, including ownership and H.R.

11.     The response from management was "that's just Paul" and instructed Mr. Wicks to not take it so seriously.

12.     No corrective action was taken against Jakes for his overt racism.

13.     In fact, Jakes was promoted shortly after he began to a management position on the same level as Mr. Wicks.

14.     Other employees at the Iron Mountain location exhibited the same behavior, calling employees and customers "nigger" on a regular basis, frequently coupled with extremely racist jokes.

15.     Management would often laugh along or even participate in the racist behavior.

16.     On May 29, 2021, Defendant hosted a company bonfire at Jakes' house, which was exclusively attended by Rize employees.

17.    At this company event, while he was indoors, someone spray-painted "nigger" on Mr. Wicks' car.

18.    Defendant did not take any action in response.

19.    In April 2021, Defendant terminated Darren, the only other black man working at the Iron Mountain location, for posting a picture on his personal Facebook page complaining about racism in America's workforce.

20.    The post did not mention Rize, but he was nevertheless fired for it.

21.    Other white employees since have made posts complaining about work on their Facebook pages, but Defendant has not terminated those employees.

22.    In May 2021, a manager by the name of Tosha Duncan, a white woman, posted a picture on the company's Facebook page which included the word "nigga." Several other members of the Defendant's management team "liked" the post or responded with positive comments.

23.    After Mr. Wicks complained about the post, Defendant's response was to suspend Duncan for a week and show a video on racial sensitivity.

24.    Upon information and belief, this training video is the only training implemented by Rize in response to any complaints of racist behavior during Mr. Wicks' employment.

25.    In October 2021, a white employee by the name of Dylon Winter shared a Facebook post which contained the word "nigga."

26.  Upon information and belief, Defendant took no action in response to the racial slur on Winter's Facebook page.

27.  In February 2022, Mr. Wicks drafted a written complaint regarding the racism he had experienced from a single co-worker by the name of Ron and submitted the complaint to Defendant's Human Resources department.

28.  Defendant's response was to return the written complaint to Mr. Wicks and instruct him to remove over 90% of the incidents from the complaint, or they would refuse to accept it.

29.  Included in the events that Defendant's H.R. demanded Mr. Wicks *remove* from his complaint were the following:

    a.  On Ron's second day of work, he joked that there was a "car full of Indians outside" who would scalp him if he made any mistakes in their order.

    b.  In September 2021, Ron spent several minutes describing to Mr. Wicks a car with Black customers waiting for their order, using racial slurs and stereotypes.

    c.  Later that month, Ron jumped around the store smacking his mouth and chanting in a sick imitation of a Native American stereotype. When Mr. Wicks refused to join, he asked "What kind of fucking powwow is this?"

    d.  In January 2022, Ron entered the store with a Mexican customer's I.D., showing it to other employees and mocking the customer's heritage. Ron

suggested that the customer had an excessive amount of names because he was a "fucking criminal and he's trying to get away with all his crimes. Fucking Mexicans." This event occurred in front of Defendant's CEO, who took no action in response.

e.  In February 2022, Ron sexually harassed Mr. Wicks, which included making comments about his "tight" or "cute little butt."

30.  Mr. Wicks, of course, declined to remove any complaints about Ron from his report. Accordingly, Defendant's H.R. department refused to accept it.

31.  Despite not accepting the complaint, Defendant's H.R. department clearly shared information from the sexual harassment complaint with others within the company.

32.   Soon after making the complaint, other employees started to sexually harass Mr. Wicks, including supervisors and managers.

33.  For example, the store's assistant manager, David, and Paul Jakes started to harass Mr. Wicks by touching each other inappropriately or pretending to sexually harass one another whenever Mr. Wicks was near, none of which occurred before Mr. Wicks complained to H.R.

34.  The clear goal of David and Paul was to further harass and retaliate against Mr. Wicks for his complaint to H.R.

35.   Another employee by the name of Noel sexually harassed Mr. Wicks on a regular basis by making overt sexual advances, despite knowing that Mr. Wicks was in a committed relationship and despite Mr. Wicks asking her to stop. This harassment included Noel asking Mr. Wicks to "stick it in her" behind the counter.

36.   When Mr. Wicks complained to Defendant's H.R. department about Noel's harassment, Defendant claimed that they could not take *any action* to stop the sexual harassment because the audio on the security cameras just happened to cut out every time Noel harassed Mr. Wicks.

37.   On April 1, 2022, Rize's H.R. Department had clearly had enough of Mr. Wick's complaints of discrimination and harassment, and so they suspended him for seven days due to alleged "attendance issues" and "discrepancies" in his work hours.

38.   These alleged "attendance issues" were small, nit-picked complaints going back through Mr. Wicks' entire employment with Defendant, almost all of which had reasonable explanations.

39.   For example, one alleged "discrepancy" was an incident where MR. Wicks came in two hours late to his shift. Mr. Wicks had stayed two hours late the prior shift and so the store manager approved him coming in two hours late on his next shift.

40.    Defendant's H.R. Department did not permit Mr. Wicks to explain that or any other alleged "discrepancy," and instead simply suspended him.

41.    Other white employees regularly came in late or left during work hours to attend to personal business, but were not suspended.

42.    On August 29, 2022, Mr. Wicks was suspended by Defendant's H.R. Manager, Alex Brash, in the middle of a complaint about discrimination.

43.    Mr. Wicks had called Brash that day to complain about the inventory supervisor making broad, demeaning statements about men, including Mr. Wicks.

44.    Before Mr. Wicks could finish his complaint, Brash cut him off and started to mock Mr. Wicks, telling him that he was sick of his complaints and could not deal with Mr. Wicks because Brash was on vacation.

45.    Brash refused to take the complaint and instead suspended Mr. Wicks for "his conduct."

46.    When Mr. Wicks attempted to talk to the store manager, he was told he was suspended for "Taking too much personal time on the clock."

47.    When Mr. Wicks pointed out that other white employees were not suspended for the same behavior, Mr. Wicks was told that he was suspended for "job performance."

48.    While on his suspension, Mr. Wicks was told that if he missed any future work, even for sick leave, he would be suspended again.

49.    On September 7, 2022, Mr. Wicks spoke to John, Rize's owner, regarding his complaints of discrimination and his suspension.

50.    John alleged at least three different reasons for Mr. Wicks' suspension, each of which were untrue, including behavior, attendance, and walking off the job without approval.

51.    Furthermore, John berated Mr. Wicks for complaining about the discrimination and harassment he was experiencing at the store, dismissing his complaints outright.

52.    Mr. Wicks was never scheduled for another shift with the Defendant, resulting in his constructive termination.

53.    As a result of the discrimination he faced at Rize, Mr. Wicks has incurred significant damages, including loss of wages and benefits, as well as significant stress and emotional harm.

## COUNT I

## RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

54.    Plaintiff incorporates by reference all preceding paragraphs.

55.    In violation of Title VII, 42 USC 2000e-2(a), Defendant discriminated against Plaintiff because of his race.

56.    Plaintiff is a black man who was employed by Defendant within the meaning of 42 USC 2000e.

9

57.    Defendant is an employer within the meaning of 42 USC 2000e.

58.    During Plaintiff's employment with Defendant, he was subjected to an overwhelmingly discriminatory and hostile work environment due to his race.

59.    Defendant utterly failed to take any action in response to Plaintiff's complaints of discrimination.

60.    Defendant's supervisors encouraged and participated in the hostile work environment.

61.    Ultimately, Plaintiff was terminated without a legitimate, non-discriminatory reason.

62.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from racial discrimination and harassment.

63.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.  Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B.  Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.  Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.  Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT II

## RACIAL DISCRIMINATION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT

64.    Plaintiff incorporates by reference all preceding paragraphs.

65.    In violation of the Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et. seq.* ("ELCRA"), Defendant discriminated against Plaintiff because of his race.

66.    Plaintiff is a black man who was employed by Defendant within the meaning of ELCRA.

67.    Defendant is an employer within the meaning of MCL 37.2201.

68.    During Plaintiff's employment with Defendant, he was subjected to an overwhelmingly discriminatory and hostile work environment due to his race.

69.    Defendant's supervisors encouraged and participated in the hostile work environment.

70.    Ultimately, Plaintiff was terminated without a legitimate, non-discriminatory reason.

71.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from racial discrimination and harassment.

72.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; **he has** suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.   Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B.   Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.   Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.   Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT III

## SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

73.   Plaintiff incorporates by reference all preceding paragraphs.

74.   In violation of Title VII, 42 USC 2000e-2(a), Plaintiff was repeatedly subjected to sexual harassment while at work.

75.    Plaintiff is a black man who was employed by Defendant within the meaning of 42 USC 2000e.

76.    Defendant is an employer within the meaning of 42 USC 2000e.

77.    Title VII prohibits sexual harassment in the workplace and obligates employers to take certain steps to prevent such harassment and discrimination.

78.    Despite being aware of it, Defendant failed to take any actions to prevent the continued sexual harassment and hostile work environment.

79.    Ultimately, Plaintiff was terminated without a legitimate, non-discriminatory reason.

80.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from discrimination and harassment on the basis of sex.

81.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; he has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.  Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.  Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.  Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT IV

## SEXUAL HARASSMENT IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT

82.  Plaintiff incorporates by reference all preceding paragraphs.

83.    In violation of the Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et. seq.* ("ELCRA"), Plaintiff was repeatedly subjected to sexual harassment while at work.

84.    Plaintiff is a black man who was employed by Defendant within the meaning of ELCRA.

85.    Defendant is an employer within the meaning of MCL 37.2201.

86.    The ELCRA prohibits sexual harassment in the workplace and obligates employers to take certain steps to prevent such harassment and discrimination.

87.    Despite being aware of it, Defendant failed to take any actions to prevent the continued sexual harassment and hostile work environment.

88.    Ultimately, Plaintiff was terminated without a legitimate, non-discriminatory reason.

89.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from discrimination and harassment on the basis of sex.

90.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; he has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment

of life; and he has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.    Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B.    Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.    Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.    Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT V

## RETALIATION IN VIOLATION OF TITLE VII

91.  Plaintiff incorporates by reference all preceding paragraphs.

92.  Plaintiff is a black man who was employed by Defendant within the meaning of 42 USC 2000e.

93.  Defendant is an employer within the meaning of 42 USC 2000e.

94.  Plaintiff complained repeatedly about discrimination on the basis of race and sex.

95.  Defendant had knowledge of Plaintiff's opposition to the above referenced discrimination and harassment prior to Plaintiff's termination.

96.  In violation of Title VII, 42 USC 2000e-3(a), Defendant retaliated against Plaintiff for his protected activity by creating a hostile work environment and terminating his employment without a legitimate non-discriminatory reason.

97.  Multiple supervisors literally told the Plaintiff that they were sick of his complaints, despite taking no action to address them.

98.  Defendant literally suspended Plaintiff without pay in the middle of a complaint about race and sex discrimination.

99.  Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from discrimination and harassment on the basis of race and sex.

100.  As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has lost wages and benefits; his future earning capacity has been substantially impaired; he has suffered severe emotional

distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and he has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A. Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B. Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.  Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT VI

## RETALIATION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT

101.   Plaintiff incorporates by reference all preceding paragraphs.

102.   Plaintiff is a black man who was employed by Defendant within the meaning of ELCRA.

103.   Defendant is an employer within the meaning of MCL 37.2201.

104.   Plaintiff complained repeatedly about discrimination on the basis of race and sex.

105.   Defendant had knowledge of Plaintiff's opposition to the above referenced discrimination and harassment prior to Plaintiff's termination.

106.   In violation of the Elliot-Larsen Civil Rights Act, MCL § 37.2701, Defendant retaliated against Plaintiff for his protected activity by creating a hostile work environment and terminating his employment without a legitimate non-discriminatory reason.

107.   Multiple supervisors literally told the Plaintiff that they were sick of his complaints, despite taking no action to address them.

108.   Defendant literally suspended Plaintiff without pay in the middle of a complaint about sex discrimination.

20

109.  Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from discrimination and harassment on the basis of race and sex.

110.  As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.  Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B.  Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.  Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.  Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

Respectfully submitted,

**MILLER COHEN PLC**

/s/ *Ryan Paree*
Keith Flynn (P74192)
Ryan A. Paree (P80345)
*Attorneys for Plaintiff*
7700 Second Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
Dated: July 8, 2024     kflynn@millercohen.com
rparee@millercohen.com

22

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## MARQUETTE DIVISION

CODY WICKS,

                                        Case No.

                Plaintiff,              Judge:

v.

FIRST PROPERTY HOLDINGS, LLC
d/b/a RIZE

                Defendant.

_____

Keith D. Flynn (P74192)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
Miller Cohen, PLC
7700 2nd Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com
_____/

## **DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiff, Cody Wicks, by and through his attorneys,

**MILLER COHEN, P.L.C.**, and hereby demands a trial by jury, for all issues so

triable.

23

Respectfully submitted,

**MILLER COHEN PLC**

/s/*Ryan Paree*
Keith Flynn (P74192)
Ryan A. Paree (P80345)
*Attorneys for Plaintiff*
7700 Second Ave, Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com

Dated: July 8, 2024

24